## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **PAMALA VINCENT,** | ) | |
| **individually and as representative** | ) | |
| **of a class of all those similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 12-CV-210-JED-PJC** |
| | ) | |
| **LINDSEY MANAGEMENT CO., INC.** | ) | |
| **A/K/A LINDSEY MANAGEMENT** | ) | |
| **COMPANY, INC., et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

The Court has for its consideration defendant Lindsey Management Co., Inc.'s Motion

for Summary Judgment on the Proper Defendant Issue and Brief in Support (Doc. 30), defendant

James E. Lindsey's Motion for Summary Judgment on the Proper Defendant Issue and Brief in

Support (Doc. 31), and two related motions, plaintiff's Motion to Strike Sham Affidavit

Testimony and/or for Other Relief Deemed Appropriate by the Court (Doc. 49) and plaintiff's

Combined Motion to Strike and Application to File Sur-Reply Regarding Defendant Lindsey

Management Co., Inc.'s Motion for Summary Judgment on the Proper Defendant Issue (Doc.

46).

### I.   Background

Plaintiff, Pamala Vincent, is a former tenant of the "The Greens at Owasso Apartments"

in Owasso, Oklahoma.  Vincent initiated this putative class action against Lindsey Management

Co., Inc. ("LMC"), James Lindsey, the Chairman and Chief Executive Officer of LMC, and

numerous individual residential apartment complexes, such as The Greens at Owasso, a Limited

Partnership, which is managed by LMC.[1]  LMC manages numerous apartment complexes in several states.  Each of the complexes is owned by an individual legal entity – usually in the form of a limited partnership (collectively referred to as the "Property Owners") – which is not owned or controlled by LMC.  When a tenant decides to lease an apartment at a complex managed by LMC, they enter into a lease agreement with the respective Property Owner that owns the complex.  Plaintiff alleges that the defendant Property Owners enter into leases with their tenants which contain unlawful and unenforceable acceleration and liquidated damages clauses and that the defendants have wrongfully collected in excess of $4 million as a result of these provisions.

Vincent claims that the provisions of the lease at issue state that the Property Owners, upon default of a tenant, can accelerate the remaining monthly payments of the lease term and require full payment.  The lease also contains a liquidated damages clause which states that the Property Owner "shall be entitled to recover as liquidated damages an amount equal of one-half of the rent calculated from the first day of the month following the date on which Resident vacates the apartment through the end of the lease term; but in no event shall the amount of liquidated damages exceed an amount equal to three months' periodic rent."  (Doc. 1-2, at 18). Upon a tenant's early termination of the lease, tenants are asked to sign a "Resident Release from Lease" document which states that the tenants agree to pay liquidated damages, as described above, in lieu of the Property Owner's acceleration.

On March 16, 2012, Plaintiff filed a petition in Rogers County, Oklahoma, alleging numerous causes of action against the defendants as a result of this allegedly unlawful conduct in

---

[1]  Vincent's lawsuit also stated claims against Lindsey & Associates, Inc., Lindsey & Associates, Inc. of Arkansas, Laura Wall, Jobe Patterson, and Christy Patterson.  These defendants have been dismissed by joint stipulation.  (Docs. 19, 33, and 37).

her individual capacity and as representative of a putative class.  On April 10, 2012, the defendants removed the case to this Court pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act, 28 U.S.C. § 1332(d).  From the onset of this case, defendants LMC and James Lindsey vigorously contested their status as party-defendants.  To that end, the Court ordered that discovery take place with respect to whether LMC and James Lindsey were proper defendants.  The Court also provided a deadline for summary judgment briefing on the proper party issue.  LMC and James Lindsey each seek summary judgment as to plaintiff's claims against them.

## II.  Discussion

As an initial matter, plaintiff has filed two motions challenging materials submitted by defendants in support of their summary judgment motions which the Court takes up for the purpose of determining what should be considered as a part of the summary judgment record.

### A.  Plaintiff's Motion to Strike Sham Affidavit Testimony and/or for Other Relief Deemed Appropriate by the Court (Doc. 49)

Plaintiff seeks an order of the Court striking the affidavit testimony of D. Scott Rogerson, the President of Corporate Operations and Chief Financial Officer of LMC (Docs. 30-3 and 45-2).  Plaintiff argues that Rogerson's testimony is, among other things, "misrepresentative and/or misleading" when compared to various other past representations made by LMC about its status with respect to the apartment complexes it manages.

The standards applicable to striking a purportedly sham affidavit are well established in this Circuit:

> "[A]n affidavit may not be disregarded [solely] because it conflicts with the *affiant's prior sworn statements*.  In assessing a conflict under these circumstances, however, courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue."  We have described cases in which an affidavit raises but a sham issue as "unusual."  In

determining whether an affidavit creates a sham fact issue, we considered whether: "(1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain."

*Law Co., Inc. v. Mohawk Constr. & Supply Co.*, 577 F.3d 1164, 1169 (10th Cir. 2009) (internal citations omitted, italics added).   As the language above implies, the sham affidavit rule does not apply to *unsworn* prior statements by an affiant.  *See, e.g., Shockley v. City of Newport News*, 997 F.2d 18, 23 (4th Cir. 1993) (explaining that a sworn affidavit is not a "sham" merely because it contradicts unsworn letters); *Hill v. Martinez*, 87 F. Supp. 2d 1115, 1128 (D. Colo. 2000) ("Dr. Richie's 1995 Report is not sworn testimony and, thus, cannot be considered in a sham affidavit inquiry."); *Oyarzo v. Tuolumne Fire Dist.*, 2013 WL 3327882, at *26 n.19 (E.D. Cal. July 1, 2013) ("The sham affidavit rule does not apply to unsworn statements or documents.").

Among the issues discussed in his affidavits, Rogerson makes the following pertinent representations:

The Management Company does not handle the leasing of the property.

The Management Company does not handle the transaction, negotiation, or showing of property.

The Management Company made no representations to any tenant regarding the terms of any lease.

The Management Company took no part in the negotiations between the Property Owners and any tenant.

All tenant negotiations and leasing transactions are performed by the Property Owner and/or the Property Owner's employees.

The Management Company does not own any of the apartment complexes it manages, nor does the Management Company own or exercise any control over any of the Property Owners that do own those apartment complexes.

(Doc. 30-3).  Vincent contrasts these representations with those made by LMC on several other occasions, including representations made during the course of other litigation.  For example,

4

when LMC was sued for alleged wage violations in this Court in 2006 (*Bryant v. Lindsey Management Co., Inc.*, Case No. 06-CV-678), it made several representations during the course of that litigation which are contradictory to Rogerson's averments.  Specifically, LMC admitted that employees at the facilities it manages were "employed by LMC."  (Doc. 50-12, at ¶¶ 2, 6, and 10).  In addition, Vincent points to representations made by defendant James Lindsey to various government entities in his capacity as Chairman of LMC wherein LMC is, among other things, described as "own[ing] and operat[ing] more than 25,000 apartment units in a seven-state region."  (Doc. 49-9).  Vincent attaches numerous other exhibits which contain statements by LMC and others which strongly suggest that LMC owns the apartments it manages and directly employs the individuals on site.  (*See* Docs. 49, 50, and 59).

Vincent has most certainly made a strong showing that LMC has made contradictory statements with respect to its relationship to the apartment complexes at issue.  But of all the materials plaintiff points to as conflicting with the Rogerson affidavit, none of them constitute sworn prior statements by Rogerson.  As such, they are not relevant to the sham affidavit inquiry and provide no basis for striking Rogerson's affidavits.  In addition, the Court notes that LMC has attempted to provide some explanation for the inconsistent positions it has taken.  LMC represents that it has made overly broad statements and some mistakes in its characterization of LMC's involvement with the apartments it manages.  LMC also points out that it is not always cost-effective for it to litigate the proper party issue when it is sued and LMC has therefore not contested its status as a proper defendant on some occasions.  Based upon the foregoing, the Court finds that Rogerson's affidavits should not be stricken as sham testimony.  Vincent's Motion to Strike is therefore **denied**.

**B. Plaintiff's Combined Motion to Strike and Application to File Sur-Reply Regarding Defendant Lindsey Management Co., Inc.'s Motion for Summary Judgment on the Proper Defendant Issue (Doc. 46)**

Vincent also asks the Court to strike the declaration of Pamela Edwards, attached in support of LMC's reply brief (Doc. 45-1), as well as "briefing and misrepresentations" contained in the reply brief regarding policies of the Oklahoma Real Estate Commission.  Vincent asserts that Edwards' declaration is incorrect and misleading.  Vincent also requests the opportunity to file a surreply to respond to issues purportedly raised for the first time in LMC's reply brief.

Pursuant to Fed. R. Civ. P. 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike affirmative defenses pursuant to Rule 12(f) "are disfavored and are infrequently granted." *United States v. Hardage,* 116 F.R.D. 460, 463 (W.D. Okla. 1987); 5 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1381 (3d ed.) (collecting cases).  Generally speaking, a motion to strike seeks a "drastic remedy." *Hardage,* 116 F.R.D. at 463-64 (citations omitted); *see also Fed. Dep. Ins. Corp. v. Niver*, 685 F. Supp. 766, 768 (D. Kan. 1987) ("A motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.").

The Court has carefully reviewed Ms. Edwards' declaration and LMC's related brief, as well as the materials submitted by Vincent, and finds that the striking of Edwards' declaration is not warranted under the circumstances.  The Court notes that paragraph four of the declaration, which recounts Ms. Edwards' conversation with an OREC employee, is inadmissible hearsay. The Court therefore declines to consider that portion of the declaration in reaching its decision.

As to Vincent's request for leave to file a surreply, the Court has reviewed LMC's reply brief and finds that it does not raise new arguments so as to warrant Vincent's filing of a surreply.  *See* LCvR7.2.

Accordingly, Vincent's Combined Motion to Strike and Application to File Sur-Reply Regarding Defendant Lindsey Management Co., Inc.'s Motion for Summary Judgment on the Proper Defendant Issue (Doc. 46) is also **denied**.

### C. Defendant Lindsey Management Co., Inc.'s Motion for Summary Judgment on the Proper Defendant Issue and Brief in Support (Doc. 30)

Pursuant to the Court's directive during the September 4, 2012 status and scheduling conference, summary judgment briefing on the proper party issue has been submitted by the parties.  Accordingly, the Court has before it the summary judgment motions of LMC and James Lindsey.  Plaintiff has filed responses to each and a supplement with respect to LMC's motion for summary judgment.

### Material Facts

LMC is a property management company that manages a number of residential apartment complexes in Oklahoma and in other states, including The Greens at Owasso, A Limited Partnership ("The Greens at Owasso, L.P."), where Vincent formerly resided.  It is undisputed that LMC is not a party to the lease agreement signed by Vincent or any other residential lease agreement entered into by any tenant with respect to the apartments managed by LMC.  The lease agreement at issue is solely between Vincent and The Greens at Owasso, L.P.  LMC does not own The Greens at Owasso, L.P. or any of the other apartment complexes it manages, nor does LMC own the Property Owners that own those apartment complexes.[2]  Instead, LMC enters

---

[2]   The Court notes that, despite Vincent's submissions in support of her Motion to Strike Rogerson's testimony, she does not dispute in her summary judgment briefing that LMC "does

into "Management Agreements" with the Property Owners, which authorize LMC to conduct, *inter alia*, the following activities:

> Display "for lease" signs;
>
> Organize, manage, supervise, and conduct all leasing operations;
>
> Sign, renew, extend and/or cancel leases or rental agreements;
>
> Screen and qualify and to set such standards for screening and qualifying of all leases;
>
> Collect rents and all other revenues due or to become due; and
>
> Hire, supervise, direct and discharge all employees and/or independent contractors required for the operation, management and maintenance of the property.

(Doc. 38-3, at 4-5). Despite being authorized by the Management Agreements to engage in these activities, LMC does not possess an Oklahoma Real Estate License issued by the Oklahoma Real Estate Commission ("OREC").

LMC maintains that the employees who work in the leasing offices of the apartment complexes are employed by the respective Property Owners, not LMC. However, Vincent has submitted evidence as part of the summary judgment record which raises questions about the status of these employees. Specifically, Vincent points out that the W-2 forms of LMC's former co-defendants Laura Wall, Christy Patterson, and Jobe Patterson (the "Employees") list LMC as the "Employer." Jobe's and Christy Patterson's email addresses utilize the domain of "@lindseymanagement.com." The Employees also identified their direct supervisors as Cathy and Joe Deases, who are employed by LMC as "Vice Presidents and Regional Supervisors." (Doc. 38-7, at 8). Finally, LMC's website offers career opportunities at LMC to potential

---

not now nor has it ever owned or operated any entity that is or has been a party to any residential lease agreement with any person or persons." (Doc. 30, at 5; *see also* Doc. 38, at 4 (admitting this statement of fact)).

employees for positions such as Community Director and Leasing Consultant – both categories of employees which LMC claims are employed by the respective Property Owners, not LMC.

## Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In considering a summary judgment motion, the courts determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 at 251-52. The evidence of the non-movant is to be taken as true, and all justifiable inferences are to be drawn in non-movant's favor. *Anderson*, 477 U.S. at 255; *see Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment. . . ." *Anderson*, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). When the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (quotations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998).

## Discussion

Vincent has acknowledged that her claims for violation of the Oklahoma Landlord Tenant Act, 41 *Okla. Stat*. § 101, *et seq*. ("ORLTA"), breach of contract, breach of the duty of good faith and fair dealing (i.e. bad faith), and negligent/tortious breach of contract, and breach of fiduciary duty – Counts I, X, XI, XII, XIII of her petition, respectively – are *not* asserted against LMC.[3] LMC seeks summary judgment as to the remaining claims in Vincent's petition, primarily on the basis that such claims cannot be alleged against it as a non-party to the lease agreement.

### 1. Violation of the Oklahoma Real Estate License Code and/or Oklahoma Real Estate Commission Rules (Count II)

Plaintiff alleges that LMC violated the Oklahoma Real Estate Licensing Code, 50 *Okla. Stat*. § 858-101, et seq. ("ORELC") and the corresponding Oklahoma Real Estate Commission Rules, Okla. Admin. Code 605:10-1-1, *et seq*. ("ORECR") by performing real estate services

---

[3]  The Court observes that Vincent did not raise the theory of alter ego liability or corporate veil piercing in her response to LMC's motion for summary judgment or in response to defendant James Lindsey's motion for summary judgment. (*See* Doc. 38; *see also* Doc. 39, at 7 (noting that the Court need not enter the "thicket" of corporate veil piercing)). Vincent did later discuss alter ego liability and veil piercing in the context of her Motion to Strike Sham Affidavit Testimony and/or for Other Relief Deemed Appropriate by the Court (Doc. 49), however that is not tantamount to raising the issue in opposition to summary judgment and the issue is therefore waived. *See, e.g., Workers v. Hope Elec. Corp*., 380 F.3d 1084, 1096 (8th Cir. 2004) (declining to review arguments not asserted in opposition to summary judgment motion).

without a license.  Plaintiff points out that, under ORELC, real estate licensees have a duty to treat all parties with honesty and exercise reasonable care, as well as a duty to comply with all requirements of ORELC and "all applicable statutes and rules" – which Vincent argues incorporates the strictures found in ORLTA.  59 *Okla. Stat.* § 858-353(A).  LMC counters that it is not engaging in the types of activities governed by ORELC, and even if it were, Vincent has no basis to bring a claim under ORELC as a result of LMC's unlicensed status.

Under ORELC, it is "unlawful for any person to act as a real estate licensee, or to hold himself or herself out as such, unless the person shall have been licensed to do so" under the statute.  59 *Okla. Stat.* § 858-301.  A "licensee" is defined by ORELC as any person who performs any act set out in the definition of a broker, which includes:

> any person, partnership, association or corporation, foreign or domestic, who for a fee, commission or other valuable consideration, or who with the intention or expectation of receiving or collecting a fee, commission or other valuable consideration, lists, sells or offers to sell, buys or offers to buy, exchanges, *rents or leases any real estate, or who negotiates or attempts to negotiate any such activity, or solicits listings of places for rent or lease, or solicits for prospective tenants, purchasers or sellers, or who advertises or holds himself out as engaged in such activities*

59 *Okla. Stat.* § 858-102 (italics added).

Viewing the evidence in the light most favorable to Vincent, the Court finds that there is a dispute of fact as to whether the employees at the apartment complex now at issue – The Greens at Owasso, L.P. – are employed by LMC or another entity.  Vincent has put forth evidence which raises a genuine question as to the status of the employees who negotiated and executed the lease with her.  This determination, however, does not bring about the denial of summary judgment as to Vincent's ORELC claim.  This is so for two reasons.  First, Vincent has not demonstrated that a private citizen is entitled to bring a cause of action under ORELC based upon an entity performing unlicensed activity.  The Court has found no Oklahoma authority

permitting such a cause of action and Vincent has identified none.  Second, even if such a claim were viable, Vincent has also failed to demonstrate any causal connection between LMC's unlicensed activities and the harm she is alleged to have suffered.  The harm Vincent complains of stems from the allegedly unlawful lease, to which Vincent admits LMC is not a party.

Vincent secondarily argues that the duties imposed by ORELC incorporate compliance with ORLTA.  Yet, Vincent has acknowledged that ORLTA cannot provide a basis for LMC's liability.  (*See* Doc. 38, at 13 ("Plaintiff is not asserting a claim against Lindsey Management under Count I (ORLTA).")).  This is because ORLTA contains a safe harbor provision for fully disclosed property management companies such as LMC whereby such property managers are not considered landlords under the Act.   *See* 41 *Okla. Stat*. § 116.   Because Vincent acknowledges her claim is based upon an alleged incorporation of ORLTA into the duties imposed by ORELC, her purported ORELC claim is little more than a strained attempt to hold LMC liable under ORLTA.  ORELC should not be interpreted in a manner that would permit a claim based upon ORLTA when ORLTA itself does not permit such a claim.  As such, LMC is entitled to summary judgment as to Vincent's ORELC/ ORECR claim (Count II).

### 2.  Oklahoma Consumer Protection Act (Count IX)

Vincent seeks to hold LMC liable under the Oklahoma Consumer Protection Act, 15 *Okla. Stat*. § 751, *et seq*. ("OCPA").  LMC seeks summary judgment with respect to this claim on the basis that, because Vincent's claim is based upon allegedly unlawful lease provisions, and it is not a party to the lease, LMC cannot have engaged in any unlawful practice under the OCPA.  LMC also points to *Fuqua v. Lindsey Management Co., Inc*., 2008 WL 2894064 (W.D. Okla. July 22, 2008), where the court found that an OCPA claim against LMC was not viable

where it was based upon alleged violations of the ORLTA. Vincent argues that her case is distinguishable on the basis that the *Fuqua* court was not faced with the same set of facts.

"Based on the statutory language, the four elements of a consumer's private action under the OCPA are: (1) that the defendant engaged in an unlawful practice as defined at 15 O.S. (1991), § 753; (2) that the challenged practice occurred in the course of defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury." *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000).

Vincent identifies two allegedly unlawful practices – inclusion of the lease agreement provisions and LMC's unlicensed status. The first, as explained above, is based upon a purported violation of ORLTA, which the Oklahoma legislature has determined does not apply to property managers such as LMC. In *Fuqua*, the court determined that the plaintiff could not bring a claim under the OCPA where the underlying unlawful conduct was alleged to be a violation of ORLTA. The court explained:

> Although violations of the OCPA are not limited to persons in contractual privity with a plaintiff and the act is to be interpreted liberally to achieve its remedial purposes, the court concludes the general provisions of the OCPA may not be relied upon to supplant a specific legislative determination that conduct is not actionable, at least where the plaintiff relies on the same identical conduct that is the subject of the more specific legislative enactment.

*Fuqua*, 2008 WL 2894064, at *3. The Court is persuaded by this rationale. Vincent's OCPA claim is based upon conduct which is not actionable against LMC under the ORLTA. While this case does vary from *Fuqua* insofar as plaintiff has pled allegations regarding LMC's unlicensed status, this allegation does not yield a contrary result. As with Vincent's ORELC claim, LMC's unlicensed status was not the cause of Vincent's alleged injury. Causation is a necessary element of an OCPA claim. *See Patterson*, 19 P.3d at 846. As such, LMC is entitled to summary judgment on Vincent's OCPA claim.

### 3. Declaratory Judgment and Severance of Illegal Contract Terms (Counts IV and VIII)

Vincent is not pursuing a breach of contract claim against LMC.  Nevertheless, she seeks a declaratory judgment with respect to LMC declaring the lease agreement void and/or severing the allegedly illegal provisions therein.  LMC seeks summary judgment as to these counts based upon its status as a non-party to the lease agreement.  Vincent argues she can pursue declaratory relief and severance with respect to LMC because it drafted the lease.

With respect to declaratory judgment, LMC, as a non-party to the lease agreement, has no ability to enforce the lease agreement.  To assert a declaratory judgment action against a defendant, that defendant must have a concrete stake in the subject matter of the action.  While LMC is arguably involved in the negotiation and execution of the lease agreement, it has no rights or responsibilities under the contract.[4]  *See EEOC v. Waffle House, Inc.,* 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.").  Because LMC is not a party to the lease agreement, it lacks a sufficient stake in the Court's determination of the agreement to permit a declaratory judgment action to proceed against it.  *See, e.g., Holmes v. Chesapeake Appalachia, LLC*, 2012 WL 3647674 (N.D.W. Va. Aug. 23, 2012) (holding that a declaratory judgment action would not be permitted to proceed against defendant who was not party to the contract at issue).

As to Vincent's severance remedy, the same rationale applies.  Vincent agrees that LMC is not a party to the lease agreement and does not assert a breach of contract claim against LMC. When a contract provision is unenforceable, a court considers whether that provision may be severed and the remainder of the contract enforced.  *See City of Bixby v. State ex rel. Dep't of*

---

[4]   As the Court previously noted, there is a dispute of fact regarding which entity employs the individuals negotiating and executing these leases on behalf of the Property Owners.

*Labor,* 934 P.2d 364, 370 (Okla. Civ. App. 1996).  Vincent's request for severance has no legal effect on LMC because LMC has no rights under the lease agreement.

LMC is entitled to summary judgment as to Counts IV and VIII of plaintiff's petition.

### 4.   Negligence/Gross Negligence (Count III)

LMC seeks summary judgment as to Vincent's claim for negligence/gross negligence. LMC asserts that Vincent's negligence allegation involves only negligent drafting of the lease agreement at issue and LMC owed no duty to Vincent with respect to that drafting.  Vincent counters that her claim is broader.  Specifically, Vincent argues that LMC breached a duty to exercise care in its "leasing and property management activities at issue in this litigation."  (Doc. 38, at 17).  However, Vincent adds little specificity beyond this general statement and the Court is left to theorize about its possible meanings.  Does a property management company have a duty to disclose to a prospective tenant that a lease provision is potentially unenforceable?  The parties do not supply an answer to this question.

The harm of which Vincent complains has its genesis entirely in an allegedly unenforceable lease term.  As such, for LMC to be liable for negligence, it would have to be under a duty to prevent a potential tenant from executing a lease containing such a provision. Vincent has supplied no authorities which suggest that such a duty exists and this Court located no such authority.  However, this situation is somewhat analogous to *Lichterman v. Pickwick Pines Marina, Inc.*, 2010 WL 1709980 (N.D. Miss. Apr. 23, 2010), where a lessee claimed it was harmed by the negligent preparation of a lease by an entity that was not a party to the contract. The *Lichterman* court held that a negligence claim of this type was not viable because the non-party drafter owed no duty to the lessee by virtue of a special, confidential, or fiduciary relationship; nor did the facts show that the drafter was acting on behalf of the lessee.  *Id*. at *3.

The Court finds this reasoning persuasive.  Under the facts presented here, the Court cannot say that LMC owed Vincent a duty to ensure that all terms in the lease at issue were enforceable and/or fair to Vincent.  Moreover, it is clear that LMC was, at all times, acting on the behalf of the Greens at Owasso, L.P., the party to the lease agreement.  Summary judgment is therefore granted with respect to Vincent's negligence/gross negligence claim against LMC (Count III).

### 5.  Fraud/Deceit (Count V)

Vincent alleges claims against LMC for fraud/deceit, i.e. actual and constructive fraud.  This claim fairs no better than her negligence claim.

To establish constructive fraud under Oklahoma law, Vincent must demonstrate the following elements:

> (1) defendant owed plaintiff duty of full disclosure, whether as part of general fiduciary duty or as duty arising once defendant voluntarily chose to speak to plaintiff about particular subject matter, (2) defendant misstated fact or failed to disclose fact to plaintiff, (3) defendant's misstatement or omission was material, (4) plaintiff relied on defendant's material misstatement or omission, and (5) plaintiff suffered damages as a result of defendant's material misstatement or omission.

*Schlanger Ins. Trust v. John Hancock Life Ins. (U.S.A, Inc.),* 897 F. Supp. 2d 1109, 1120 (N.D. Okla. 2012) (quoting *Specialty Beverages, L.L.C. v. Pabst Brewing Co.,* 537 F.3d 1165, 1180–81 (10th Cir. 2008)).  An intent to deceive on the part of the defendant is not necessary to prevail on a constructive fraud claim.  *Id.*

To recover for actual fraud under Oklahoma law, Vincent must prove:

> (1)  the defendant made a material representation; (2) the representation was false; (3) defendant made the representation when he knew the representation was false, or made the representation as a positive assertion recklessly, without any knowledge of its truth; (4) defendant made the representation with the intention that it should be acted upon by plaintiff; (5) plaintiff acted in reliance on the representation; and (6) plaintiff suffered injury as a result of the representation.

*Lillard v. Stockton*, 267 F.Supp.2d 1081 (N.D. Okla. 2003) (citation omitted).

16

Vincent points to no false representation made by LMC or material fact which was not disclosed to Vincent.  Indeed the terms of the lease agreement were clearly disclosed to and initialed by Vincent.  (*See* Doc. 1-2).  Even assuming one or more of the lease provisions were ultimately deemed unenforceable, drafting a lease agreement with a provision that is unenforceable does not constitute a false representation.  That is, the representation was true when made, however it is found to be unenforceable as a matter of contract law or ORLTA, as the case may be.  Vincent cites broad language used by Oklahoma courts when describing the concept of fraud, however these passages do not relieve her from demonstrating the foundational requirements of a fraud claim – a material omission or misrepresentation.  Vincent simply does not explain how LMC's actions and/or representations constitute a material omission or misrepresentation.  Accordingly, LMC is entitled to summary judgment with respect to Vincent's fraud/deceit claim (Count V).

### 6.  Money Had and Received and Unjust Enrichment (Counts VI and VII)

Vincent alleges claims for money had and received and unjust enrichment.  LMC seeks summary judgment with respect to these claims again on the basis that it is not a party to the lease agreement and therefore it has no funds of Vincent's to return.  The Court agrees.  LMC is not a party to the lease and is not the legal entity to which any funds were paid by Vincent.  Vincent has not put forth any evidence which suggests that LMC and the respective property owners have failed to observe corporate formalities or commingled funds.  Indeed, the record contains evidence to the contrary.  This undisputed evidence shows that the Property Owners file tax returns individually, as does LMC, and otherwise observe corporate formalities.  As such, LMC is entitled to summary judgment with respect to these claims.

### 7.   Civil Conspiracy (Count XIV)

"A civil conspiracy consists of two or more persons agreeing 'to do an unlawful act, or to do a lawful act by unlawful means.'"  *Peterson v. Grisham*, 594 F.3d 723, 730 (10th Cir. 2010) (quoting *Roberson v. PaineWebber, Inc*., 998 P.2d 193, 201 (Okla. Ct. App. 1999)). "[A] conspiracy between two or more persons to injure another is *not* enough; an underlying unlawful act is necessary to prevail on a civil conspiracy claim." *Roberson*, 998 P.2d at 201 (italics added).  "Disconnected circumstances, any. . . .of which[ ] are just as consistent with lawful purposes as with unlawful purposes, are insufficient to establish a conspiracy." *Peterson*, 594 F.3d at 730 (internal quotations omitted).

Having failed to withstand summary judgment with respect to any of her claims against LMC, she has not raised a triable issue of fact as to whether LMC conspired to do an unlawful act.  In light of this, LMC is entitled to summary judgment on Vincent's civil conspiracy claim (Count XIV).

### 8.  Agency Liability

Finally, LMC seeks summary judgment with respect to Vincent's agency liability allegations.  Vincent argues that, where an agent is acting within the scope of his employment, steps aside to engage in a tortious act, the agent becomes liable for the injury done.

The Oklahoma Supreme Court has explained an agent's individual liability as follows:

The general rule is that a contract made with a known agent for a disclosed principal is a contract with the principal alone. *Moran v. Loeffler–Greene Supply Co*., 316 P.2d 132, 134 (Okla.1957). However, equally true is the exception to the general rule:

"If the agent, acting within the scope of his authority, in the pursuit of a lawful purpose, steps aside to engage in a tortious act to the injury of property or personal rights of another, the agent becomes liable for the injury done." *Rogers v. Brummett*, 92 Okl. 216, 220 P. 362, 365 (1923).

The exception applies to actions for fraud, negligence, and conversion by the agent.

*Bane v. Anderson, Bryant & Co.*, 786 P.2d 1230, 1234 (Okla. 1989).

Similar to her civil conspiracy claim, Vincent has not demonstrated tortious activity on the part of LMC, and as a result, LMC is entitled to summary judgment with respect to Vincent's agency liability theory against LMC.

Based upon the foregoing, LMC's Motion for Summary Judgment on the Proper Defendant Issue and Brief in Support (Doc. 30) is **granted** as to all claims against it.  Summary judgment having been granted with respect to Vincent's claims against LMC, LMC is terminated from this case as a party-defendant.

### D. Defendant James E. Lindsey's Motion for Summary Judgment on the Proper Defendant Issue and Brief in Support (Doc. 31)

Defendant James E. Lindsey ("Lindsey") seeks summary judgment with respect to Vincent's claims against him.  It appears from Vincent's response to Lindsey's motion for summary judgment that she believes Lindsey can be held personally liable as a co-conspirator in connection with her claims for civil conspiracy (Count XIV).[5]  It does not appear that she pursues any other of her numerous claims with respect to Lindsey.

### Material Facts

It is undisputed that Lindsey is not a party to Vincent's lease agreement or any other putative class member's lease.  Lindsey is a licensed real estate broker in Arkansas and serves as a shareholder, member and partner in, and officer of, many of the entities involved in this

---

[5]  Vincent incorporates by reference her response to LMC's motion for summary judgment (Doc. 30), though the only specific portion of that brief that she makes reference to in her arguments is that relating to her civil conspiracy claim.

litigation. Lindsey serves as Chairman and Chief Executive Officer of LMC and holds 100% of

LMC's stock. Lindsey is also the President or Manager of the following defendant entities:

> The Links at Bixby Management Company, Inc;
> The Greens at Battle Creek Management Company, Inc;
> The Greens at Broken Arrow Management Company, Inc;
> Deer Run Apartments Management Company, Inc;
> The Greens at Coffee Creek Management Company, Inc;
> The Greens at Moore Management Company, Inc;
> The Links at Norman Apartments Management Company, Inc;
> The Links at Oklahoma City Management Company, Inc;
> The Greens at Owasso Management Company, Inc;
> The Links at Stillwater Apartments Management Company, Inc;
> The Links at Mustang Creek Apartments Management Company, Inc; and
> The Links at Stillwater Management Company, LLC.

These companies are the general partners with respect to the Property Owner limited

partnerships which are parties to the leases entered into by tenants. Lindsey is not, in his

individual capacity, a general partner of any of the Property Owners, however he owns 100% of

the interests in each general partner. Each Property Owner, like LMC, observes corporate

formalities by filing separate tax returns and maintaining separate corporate books and minutes.

## Discussion

The Court has carefully reviewed the parties' arguments and evidence with respect to

Lindsey's motion for summary judgment and finds, as with LMC, there is no basis for liability as

to defendant Lindsey. Vincent has produced no evidence to support her allegation of a civil

conspiracy on the part of Lindsey and the other defendants in this case. As with her claims

against LMC, Vincent relies on little more than generalized allegations, such as her claim that

Lindsey "benefited most" from the purported conspiracy. However, the record is devoid of

evidence to support the alleged conspiracy.

As a corporate officer and stakeholder of the various entities involved in this case,

Lindsey is shielded from personal liability. "The corporate structure is an artificial construct of

the law, a substantial purpose of which is to create an incentive for investment by limiting exposure to personal liability." *N.L.R.B. v. Greater Kansas City Roofing*, 2 F.3d 1047, 1051 (10th Cir. 1993).  Observation of the protections afforded by the corporate structure is "the norm, not the exception." *Id*. (quoting *NLRB v. Deena Artware, Inc*., 361 U.S. 398, 402-03 (1960).  In order to defeat this protection, the corporate veil must be pierced – something Vincent has not put forth evidence to support.  Indeed, Vincent does not dispute Lindsey's evidence in support of his statements that all corporate formalities have been observed with respect to the business entities involved here.  Nor does Vincent pursue a veil piercing theory (*see* Doc. 39, at 7).  As such, there is no basis for individual liability against Lindsey.  Accordingly, Lindsey's Motion for Summary Judgment on the Proper Defendant Issue and Brief in Support (Doc. 31) is granted.

**IT IS THEREFORE ORDERED** that:

Plaintiff's Motion to Strike Sham Affidavit Testimony and/or for Other Relief Deemed Appropriate by the Court (Doc. 49) is **denied**.

Plaintiff's Combined Motion to Strike and Application to File Sur-Reply Regarding Defendant Lindsey Management Co., Inc.'s Motion for Summary Judgment on the Proper Defendant Issue (Doc. 46) is **denied**.

Defendant Lindsey Management Co., Inc.'s Motion for Summary Judgment on the Proper Defendant Issue and Brief in Support (Doc. 30) is **granted**.

Defendant James E. Lindsey's Motion for Summary Judgment on the Proper Defendant Issue and Brief in Support (Doc. 31) is **granted**.

Defendants Lindsey Management Co., Inc. and James E. Lindsey are terminated from this case as party-defendants.

**IT IS FURTHER ORDERED** that the parties are to submit a joint status report within 21 days of the entry of this Opinion and Order regarding the time needed for discovery as to the merits of Vincent's claims.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE